**IN THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF FLORIDA GAINESVILLE DIVISION**

| | |
|---|---|
| **UNITED STATES OF AMERICA** | |
| **v.** | **Case No. 1:22-cr-00030-AW-MAL** |
| **MATTHEW SIMON GRIMM** | |

# UNITED STATES' SENTENCING MEMORANDUM

Pursuant to Federal Rule of Criminal Procedure 32, the United States of America files this sentencing memorandum to provide background information and to address some of the 18 U.S.C. § 3553(a) factors in this case.

## BACKGROUND

In January 2020, investigators from the U.S. Drug Enforcement Administration (DEA) initiated an investigation into the drug trafficking activities of the website www.smokeyschemsite.com (the "Website"). The Website operated as an e-commerce marketplace that advertised the company's specialty as the sale of "research chemicals" to the United States. However, investigators quickly learned that this was a thinly veiled attempt to legitimize illicit narcotic sales. Indeed, the vast majority of the products listed for sale on the Website were Schedule I controlled substances and controlled substance analogues that would commonly be referred to as "designer drugs." Many of the products listed on the Website had customer reviews indicating these substances were being ingested to alter the

consumer's mental state. Moreover, the Website accepted only decentralized cryptocurrency for payment.

As detailed in the Presentence Investigation Report (PSR), over the next eighteen months, investigators made a series of six (6) undercover controlled purchases of Schedule I substances from the Website using Bitcoin cryptocurrency issued by DEA as payment. All the drugs ordered by investigators were mailed from Amsterdam, NL, to the investigator's undercover address in the Northern District of Florida. Investigators used open-source information and records received pursuant to the service of legal process to identify the owner/operator of the website as a UK national, Matthew Simon Grimm. Investigators also learned the Website had been operational since 2012, and that Grimm operated another website that sold narcotics *outside* the United States.[1] Further, DEA analysts were able to trace cryptocurrency used to pay for the controlled purchases to cryptocurrency wallets belonging to Grimm.

Investigators also discovered that the UK introduced a ban on "Novel Psychoactive Substances" (NPS) in May 2016. Most of the substances sold on Grimm's drug websites fit into this category of substances. Shortly thereafter, Grimm created shell companies in the Netherlands (Natural Gifts BV) and the UK

[1] Grimm launched www.gr8researchchemicals-eu.com on January 13, 2015. This drug website primarily sold to European-based customers.

(ERJM Ltd) to allow the continued operation of his drug distribution enterprise. Grimm used Natural Gifts BV as his drug distribution facility to fulfill orders placed on both of his drug websites. Grimm also used both companies to facilitate money laundering activities, such as by commingling drug proceeds from the Website into the bank accounts for each business and using those bank accounts to pay for expenses associated with the Website.

While Grimm operated the Website from the UK, he employed a team of employees to facilitate and fulfil drug orders. Some of these employees worked from the Natural Gifts BV office space in Amsterdam, where they would package and mail customer orders across the world, including the United States. Others were employed as live chat operators who would respond to customer inquiries on Grimm's websites and provide customer payment instructions, as directed by Grimm. From within the UK, Grimm would personally respond to customer emails, make payments for the web server for the Website, order wholesale quantities of drugs to be sold on the Website, launder drug proceeds through bank accounts for his UK and Netherlands registered companies, and coordinate activities with his employees.

On October 5, 2022, a federal grand jury in the Northern District of Florida returned an indictment charging Grimm and U.S. citizen Carrie-Ann Tooley with Conspiracy to Import a Controlled Substance into the United States, Importation of

a Controlled Substance into the United States, and Conspiracy to Commit Money Laundering. On December 6, 2022, a superseding indictment was returned to expand the offense dates and to add specific property subject to forfeiture.

In the meantime, on November 8, 2022, investigators led an international coordinated takedown of Grimm's drug trafficking organization. In the early morning hours, investigators executed seizure warrants on numerous cryptocurrency wallets belonging to Grimm, resulting in the seizure of approximately $5,000,000.00 USD worth of cryptocurrency. Grimm was arrested by UK authorities as he attempted to depart his residence on a provisional arrest warrant. On the same date, searches were conducted at three locations in the UK, including Grimm's residence (with the assistance of the UK's National Crime Agency), Tooley's residence in Northport, ME, and Natural Gifts BV (with assistance of the National Police of the Netherlands). On the same day, DEA investigators arrested Tooley at her residence in the United States.

During the search of Grimm's residence, investigators observed the administrative page of the Website displayed on Grimm's home computer. The Website page listed over 44,000 orders to 50,000 customers and total sales of $5.5 million. It also displayed a world map indicating these sales took place from customers within the continental United States and Alaska:




Exhibit 1. Investigators also seized electronic evidence and paper documents demonstrating Grimm's ownership and control of the Website.

During the execution of the search warrant at Natural Gifts BV, Dutch authorities located two of Grimm's employees actively packaging drugs. They also observed printed mailing labels addressed to numerous individuals in the United States, digital scales, packaging materials, heat sealers, and dozens of plastic buckets and bins containing different controlled substances sold on the Website.

As agents contacted Tooley to execute a search warrant at her home, she asked if law enforcement's presence at her home had anything to do with her laptop. Tooley then stated she knew it had to do with her employer. The search of Tooley's residence resulted in the seizure of electronic evidence demonstrating her

employment by Grimm. Tooley also gave post-*Miranda* statements confirming her employment by Grimm and her role in the organization.

Following his UK arrest, Grimm unsuccessfully challenged extradition. Grimm was released on bond for over one year pending extradition proceedings. Grimm had his first appearance in the Northern District of Florida on July 10, 2024. *See* ECF No. 65.

On February 7, 2025, Grimm pled guilty as charged to all six counts in the Superseding Indictment: Count One charged Conspiracy to Import a Controlled Substance into the United States; Counts Two through Five charged substantive counts of Importation of a Controlled Substance into the United States; and Count Six charged Conspiracy to Commit Money Laundering.

Pursuant to the plea agreement, Grimm agreed to forfeit significant financial assets, which constitute proceeds of Grimm's illegal narcotics sales and were involved in and facilitated his money laundering. *See* ECF No. 100 at 5; ECF No. 100-1. As of August 18, 2025, due to the rise in value of certain cryptocurrency, the total value of Grimm's assets in federal custody is $26,985,202.74. There is also an additional $1,781,405.01 worth of assets yet to be seized in Grimm's British Virgin Islands-based Bitfinex accounts.

The United States Probation Office has prepared a PSR, which finds that Grimm's advisory guideline sentencing range is 168–210 months. ECF No. 129

("PSR") ¶ 107. However, as explained below, the Government objects and believes this calculation understates Grimm's properly attributed drug weight.

## ARGUMENT

### A. The Nature and Circumstances of The Offense.

The nature and circumstances of the offense are very serious. Grimm was the leader and organizer of an international drug-tracking organization that distributed a significant amount of dangerous narcotics into the United States and elsewhere for illicit use. However, the PSR has concluded that Grimm was responsible for the distribution of only 1,978 grams of synthetic cathinones and 98 grams of 5-MeO-DMT. PSR ¶ 55. According to the PSR, this is a "conservative estimate" based upon information obtained during the investigation identifying the nature and quantity of substances sold from the Website over a specific time period, which is summarized in multiple tables in the PSR. *See id.* ¶ 54. For purposes of calculating the drug weight attributable to Grimm, the PSR treats all the controlled substances—except 5-MeO-DMT—as synthetic cathinones. *See id.* ¶ 55. The United States would like to clarify and correct some of this information.

First, although the PSR states that this sales data was located in Grimm's Dropbox account, it actually came directly from the Website's server, which the federal government seized via MLAT to the Country of Cyprus. Based upon the data extrapolated from the Website's server, the DEA prepared a Report of Investigation

(ROI) that identifies and summarizes products from the Website that were sold and shipped to the United States and that qualified as controlled substances. *See* Exhibit 2 (ROI). The tables are separated by the unit or type of measurement (i.e., grams, kilograms, milligrams, blotters, capsules, and pellets). *Id.* The tables also summarize the total cost of the substances and the earliest and latest date that they were sold. *Id.* The tables in the PSR generally correspond with the tables from the ROI.

Second, the first table in the PSR inadvertently fails to include three substances that were included in the ROI:

| Name | Qty in Grams | Total Cost | Earliest Date | Latest Date |
|---|---|---|---|---|
| 2-FMA Hydrochloride | 1,658 | € 100,295.00 | 01/23/2020 | 11/03/2022 |
| 3-FPM Powder | 1,106 | € 73,087.00 | 11/02/2018 | 10/30/2022 |
| 6-APB | 918 | € 60,820.00 | 11/02/2018 | 11/04/2022 |

Ex. 2 at 3. Absent this additional information, the "total" row for the first table in the PSR (which identifies substances measured in grams) would not be accurate:

| | | | | |
|---|---|---|---|---|
| **Total** | **8,244gm** | **€563,791.38** | **11/01/2018** | **11/04/2022** |

PSR at 13.

Third, as reflected in the totals from the first table alone, Grimm was responsible for the distribution of far more than 1,978 grams of synthetic cathinones. The reduced amount in Grimm's PSR appears to be a carry-over from co-defendant Tooley's PSR, which reflected her limited responsibility and minimal role in the

organization. Unlike Tooley, who served as a customer service representative making essentially minimum wage, Grimm was the head of the drug trafficking organization, managed the day-to-day operations of the entire business, obtained over $5 million in revenue, and should therefore be held responsible for *all* the Website's sales.

When the agreed-upon sales data is consolidated, and assuming that all the controlled substances in the first three tables should be treated as synthetic cathinones for purposes of the guidelines calculation (except 5-MeO-DMT), Grimm should be held responsible for the distribution of at least 11,146 grams of synthetic cathinones,[2] with a converted drug weight of 4,235,480 grams, and a total converted drug weight of 4,245,300 grams (4,245.3 kg). This would increase the base offense level from 28 to 32, which would increase his guideline range from 168–210 months to 262–327 months.

Finally, even this corrected drug weight does not reflect the full scope of Grimm's drug-trafficking enterprise. Although the Government is not advocating that any additional weight be included in Grimm's guideline calculation, the sales data in both the ROI and the PSR represents only four years of drug sales (November 2018 – November 2022) whereas the evidence shows that the Website was in

[2] This amount is comprised of 8,244 grams from Table 1 plus 3 kg from Table 2, minus 98 grams of 5-MeO-DMT (which was separately calculated) from Table 1.

operation for a decade. Additionally, the sales data does not include sales from Grimm's other website that did not import controlled substances into the United States. *See infra* note 1. The adjusted drug weight calculation also does not include other forms of controlled substances on the Website, such as blotters, capsules, and pellets, for which Grimm paid over €250,000 (approx. $291,000 USD) to purchase wholesale quantities in just a few years. *See* PSR at 15–16; Ex. 2 at 8–10.

Nevertheless, it is important to distinguish the nature of Grimm's conduct from other forms of drug distribution. Unlike street-level dealing, which often involves violence, territorial disputes, and the exposure of minors and vulnerable populations to illicit activity, Grimm operated in an online environment. This method of distribution generally does not involve coercion, public solicitation, or the presence of firearms—factors commonly associated with high-risk, street-based trafficking. Indeed, the government is not aware of any use of violence or firearms by Grimm's drug-trafficking organization.

In sum, Grimm operated a highly successful and sophisticated operation that fueled drug addiction in the United States. While his organization did not use violence or firearms, Grimm was nonetheless responsible for the distribution of a significant quantity *and* variety of controlled substances (or controlled substance analogues) over a significant period of time. As a result, the need for the sentence imposed to reflect the seriousness of the offense, to promote respect for the law, to

provide just punishment for the offense, and to afford adequate general deterrence to criminal conduct is likewise significant.

**B. The History and Characteristics of The Defendant.**

Notwithstanding the seriousness of the offense, the United States believes there is a very low risk of recidivism. Grimm has no criminal history. Once Grimm was extradited to the United States, he timely accepted responsibility and appeared genuinely remorseful. Grimm agreed to the forfeiture of significant cryptocurrency, which has increased in value significantly since it was seized. And Grimm appears to recognize the physical health risks associated with some of the illicit substances he sold, especially when used by unwitting customers. Thus, there is a minimal need for specific deterrence and to protect the public from further crimes of Grimm.

## CONCLUSION

Accordingly, the United States respectfully recommends that the Court consider these factors and circumstances when it imposes a sentence.

August 22, 2025

Respectfully submitted,

JOHN P. HEEKIN
United States Attorney

Adam Hapner
Assistant United States Attorney
Florida Bar No. 112006
401 SE First Ave, Ste 211
Gainesville, Florida 32601
(352) 378-0996
Adam.Hapner@usdoj.gov